# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

                   )
KENNETH L. SMITH,           )
                   )
          Plaintiff,       )
                   )
          v.            )      Civil Action No. 13-CV-0298 (KBJ)
                   )
HONS. ANTONIN G. SCALIA, *et al.*,   )
                   )
          Defendants.     )
                   )
_____ )

## MEMORANDUM OPINION

In the year 2000, the Colorado Supreme Court denied Plaintiff Kenneth L. Smith's ("Smith's" or "Plaintiff's") application for membership to the Colorado bar after Smith refused to submit to a mental status examination. Following that denial and for the next nine years, Smith filed a series of lawsuits against the justices of the Colorado Supreme Court and against various state and federal judges who ruled against him in subsequent actions stemming from the adjudication of his bar application. The instant amended complaint, which Smith has filed pro se against the United States and 19 federal judges (collectively, "Defendants"), marks the eleventh lawsuit that Smith has filed stemming from the denial of his admission to the Colorado bar. (Amended Compl. ("Compl."), ECF No. 8.) In the instant 277-page pleading, Smith generally maintains that the judges involved in his latest lawsuit, like those who decided all of his previous actions, have violated the Constitution and international law, and are therefore subject to criminal indictment and removal from the federal bench. (*See id.* ¶¶ 601-617.)

Before this Court at present are two motions to dismiss the amended complaint. (ECF Nos. 36, 37.)[1]  In their motions, Defendants contend that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and also pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* Mem. in Supp. of Mot. to Dismiss of the D.C. Court Defs. ("D.C. Defs.' Mem."), ECF No. 36-1, at 3, 10-22; Non-D.C. Defs.' Mot. & Mem. of Law in Supp. of Mot. to Dismiss ("Non-D.C. Defs.' Mot."), ECF No. 37, at 14-23.)[2] In particular, Defendants argue that absolute and sovereign immunity bar Smith's claims; that no cause of action exists for several of the claims Smith alleges; and that, in any event, certain of Smith's claims are entirely precluded by both res judicata and issue preclusion because the complaint raises claims that previous courts have already heard and rejected.  (D.C. Defs.' Mem. at 10-22; Non-D.C. Defs.' Mot. at 14-23.) Additionally, Defendants ask the Court to impose a pre-filing injunction against Smith in order to bar him from initiating any new pro se actions in this Court without first obtaining leave to file.  (D.C. Defs.' Mot. ¶ 10; Non-D.C. Defs.' Mot. at 6.)  The Non-D.C. Defendants—*i.e.*, the United States and the individual defendant judges who are not appointed to the United States courts for the District of Columbia—also seek monetary sanctions.  (Non-D.C. Defs.' Mot. at 6.)

---

[1] The two motions were submitted by two different groups of defendants in this matter, each of which is represented by separate counsel.  One motion and supporting memorandum was filed on behalf of the judges from the D.C. Circuit and D.C. District Court (the "D.C. Defendants").  (*See* Mot. to Dismiss of the D.C. Ct. Defs. ("D.C. Defs.' Mot."), ECF No. 36.)  The other motion and memorandum was filed on behalf of all the other judges and justices named in the complaint and also the United States (the "Non-D.C. Defendants").  (*See* Fed. Judicial Defs.' Mot. to Dismiss ("Non-D.C. Defs.' Mot."), ECF No. 36.) Smith has responded to each motion in turn.  (*See* Resp. in Opp'n to Non-D.C. Defs.' Mot. to Dismiss ("Opp'n I"), ECF No. 41; Resp. in Opp'n to D.C. Defs.' Mot. to Dismiss ("Opp'n II"), ECF No. 43.)

[2] Page numbers throughout refer to the number assigned by the Court's electronic filing system.

Having considered Plaintiff's complaint and Defendants' arguments for dismissal, this Court concludes (1) that sovereign immunity deprives the Court of jurisdiction over Smith's claim for damages against the United States and the individual judge defendants (to the extent that the individual judges have been sued in their official capacity), (2) that absolute judicial immunity bars the claims against the individual judge defendants in their personal capacity, and (3) that there is no cause of action available for the non-monetary relief that Smith seeks. Accordingly, Defendants' motions to dismiss will be **GRANTED** and the instant complaint will be dismissed with prejudice. Additionally, in light of the fact that Smith has now initiated eleven separate actions seeking relief for the denial of his bar license, Smith will be **ENJOINED** from filing any subsequent actions in the U.S. District Court for the District of Columbia arising out of the same allegations in the instant amended complaint without first seeking leave of court. A separate order consistent with this opinion will follow.

## I.    BACKGROUND

### A. History Of Prior Litigation

As noted, between 2000 and 2009, Plaintiff Smith filed ten lawsuits that relate to the denial of his admission to the Colorado bar.[3] A detailed substantive and procedural history of many of Smith's earlier cases is described in the Tenth Circuit's consolidated

---

[3] *See Smith v. Mullarkey*, No. 00-2225 (D. Colo.) (*Smith I*); *Smith v. Mullarkey*, 121 P.3d 890, 891 (Colo. 2005) (*Smith II*); *Smith v. The Tenth Circuit*, No. 04-1222 (D. Colo.) (*Smith III*); *Smith v. Mullarkey*, No. 04-1223 (D. Colo.) (*Smith IV*); *Smith v. Bender*, No. 07-1924 (D. Colo.) (*Smith V*); *Smith v. Ebel*, No. 08-0251 (D. Colo.), *later restyled as Smith v. Krieger*, 643 F. Supp. 2d 1274 (D. Colo. 2009) (*Smith VI*); *Smith v. Anderson*, No. 09-1018 (D. Colo.) (*Smith VII*); *Smith v. Eid*, No. 10-0078 (D. Colo.) (*Smith VIII*); *Smith v. Arguello*, No. 09-2589 (D. Colo.) (*Smith IX*); *Smith v. Thomas*, No. 09-1926 (D.D.C.) (*Smith X*). Each of these cases was dismissed, and the federal judges involved in these dismissed cases are now named as defendants in this action.

appeal of three such cases, and will not be repeated here.  *See Smith v. Krieger*, 389 F.

App'x 789, 792-93 (10th Cir. 2010).  In short, after the Colorado Supreme Court denied

his application for bar membership, Smith brought suit against the Colorado Supreme

Court justices in federal court in the District of Colorado and in Colorado State court

seeking to overturn that decision.  *See id.* at 791.  The U.S. District Court in the District

of Colorado dismissed the complaint; the Tenth Circuit affirmed the dismissal on

appeal; and the Supreme Court of the United States denied *certiorari*.  *See id.* at 791-

92, 799-800.  Smith then filed suit against the judge on the U.S. District Court for the

District of Colorado who decided the matter, and each of the Tenth Circuit judges and

Supreme Court justices who were involved in upholding the dismissal decision.  *See id.*

This pattern repeated itself in Colorado district court eight more times—in effect, each

time a court rendered an opinion unfavorable to Smith, he responded by filing a new

lawsuit naming the authors of the prior judicial opinions as defendants and alleging that

those judges, too, had violated his constitutional rights.  *See id.* at 791-92.  Moreover,

in several of the cases, Smith specifically requested that the federal judges who ruled

against him be removed from the bench "due to their alleged failure to maintain the

'good Behaviour' required for continued tenure under Article III," and he also claimed

an alleged right to prosecute the defendant judges pursuant to authority he maintains is

vested in him under the Ninth and Tenth Amendments, *id.* at 796—claims that Smith

brings again now.  In addition, Smith's sole attempt to bring suit in Colorado state court

fared no better:  the Denver County District Court dismissed the case on the grounds

that it lacked jurisdiction to consider challenges to the state supreme court's decisions

regarding bar admission; the Colorado Supreme Court affirmed dismissal; and the

Supreme Court denied *certiorari*. *See Smith III*, 121 P.3d 890, 891 (Colo. 2005), *cert. denied*, 547 U.S. 1071(2006).

Eventually, the U.S. District Court for the District of Colorado put an end to the filings in that jurisdiction: at the same time that it dismissed Smith's seventh lawsuit (the eighth and ninth lawsuits in Colorado federal court were still pending), the court imposed a pre-filing injunction barring Smith from filing future actions in that court without first meeting certain requirements. *Smith VII*, No. 09-1018, 2009 WL 4035902, at *3-4 (D. Colo. Nov. 19, 2009)("Smith will not be permitted to file new actions in this Court without the representation of a licensed attorney admitted to practice in the District of Colorado. The requirement that he have such counsel will be lifted only if he has obtained permission from this Court to proceed pro se."). The court based the injunction on the number of suits Smith had filed stemming from the same facts (his denial of admission to the Colorado Bar); Smith's "penchant for making duplicative arguments"; and the "increasingly abusive" tone of his filings. *Id.* at *4.[4] The court also reasoned that "[t]here [would] be no end if plaintiff is permitted to continue filing actions that argue that a failure to receive his desired outcome in a lawsuit is grounds for filing yet another." *Id.*

At some point after the pre-filing injunction was entered, the Tenth Circuit consolidated Smith's sixth, seventh, and eighth lawsuits on appeal, and affirmed the dismissal of each case. *Smith v. Krieger*, 389 F. App'x at 792-93. The Supreme Court then denied *certiorari*. 131 S. Ct. 1511 (2011). In addition, even before the Colorado

---

[4] Plaintiff's prior complaints, like the one at issue here, contained "abusive language" that, among other things, accused the judicial defendants of "tyranny," and "suggest[ed] that violence against federal judges may be justified[.]" *Smith VII*, 2009 WL 4035902, at *4; *see also Smith v. Krieger*, 389 F. App'x at 800 (noting that Plaintiff's "briefs contain vulgar language, threats of lethal violence against judges[,]" and "personal attacks" on judges).

district court had issued rulings with respect to the sixth, seventh, and eighth lawsuits, Smith filed a ninth lawsuit there, naming as defendants the judges who presided over his prior cases and the government attorneys who had opposed those previous actions. *Smith IX*, No. 09-2589 (D. Colo.). The district court dismissed lawsuit number nine due to the judicial defendants' absolute immunity and Smith's failure to state a claim with respect to the government attorney defendants. *Smith IX*, No. 09-2589, 2010 WL 1781937, at *2-3. The Tenth Circuit affirmed dismissal, 415 F. App'x 57 (10th Cir. 2011), and the Supreme Court denied *certiorari* once again, 132 S. Ct. 113 (2011).

Undaunted, Smith filed a tenth lawsuit—this time, in the U.S. District Court for the District of Columbia, presumably as a result of the pre-filing injunction in Colorado—seeking to overturn the Supreme Court's denial of *certiorari* in the consolidated appeal in the Tenth Circuit. A judge in this district dismissed that case; the D.C. Circuit affirmed the dismissal on appeal; and the Supreme Court denied *certiorari* for that lawsuit as well. *Smith X*, 2010 WL 253822, at *1 (D.D.C. Jan. 21, 2010)*, aff'd*, 383 F. App'x 8 (D.C. Cir. 2010); *see also* 131 S. Ct. 1614 (2011).

## B. Procedural History Of This Case

Smith has now filed his eleventh complaint, which is also his second in this district.[5] Like its predecessors, the instant complaint seeks, at bottom, to remedy the Colorado Supreme Court's allegedly wrongful decision to deny Smith membership to

---

[5] Notably, Smith has since filed another lawsuit in this district. After filing the instant complaint, and prior to the Defendants' responsive pleadings, Smith filed a twelfth action, which came before this Court as a related case. *Smith v. Tacha*, No. 13-1610 (D.D.C.) (*Smith XII*). As Smith made clear in that complaint, the allegations in *Smith XII* were "quite literally identical" to those in the instant case, and Smith conceded that the *Smith XII* complaint was a "duplicative filing" meant to keep his claims alive in the event the instant action was dismissed. Accordingly, this Court dismissed that twelfth lawsuit as duplicative. *See Smith XII*, No. 13-1610, 2013 WL 5820495, at *1 (D.D.C. Oct. 23, 2013).

the Colorado bar. In addition, as set forth over the course of hundreds of pages, Smith now challenges the actions of all of the judges and justices involved in the dismissal of his earlier cases, recounting in great detail the procedural history of those prior actions and repeatedly insisting that all Defendants have egregiously misused their authority. The instant amended complaint also includes facts that pertain to the dismissal of *Smith X*, the first action Smith filed in this district. Specifically, the amended complaint asserts that the *Smith X* district court judge's dismissal constituted misconduct, and so did the actions of the D.C. Circuit court judges who affirmed that dismissal determination. (*See* Compl. ¶¶ 70-84.) Smith also alleges that the Supreme Court justices engaged in misconduct when they recused themselves from consideration of his petition for *certiorari* in regard to *Smith X* because they had been named as defendants in the case; their recusal necessarily meant *certiorari* was denied. (*See id.* ¶¶ 85-87.)[6]

The instant complaint includes six distinct claims for relief. First, Smith seeks to enforce Article III's "Good Behavior" clause by removing from the federal bench all of the individual judges who are named as defendants ("Count I"). (*Id.* ¶¶ 601-605.) Second, Smith seeks an order permitting him to proceed as a private attorney general to impanel a grand jury and to initiate criminal prosecution against the named individual judges pursuant to the Ninth and Tenth Amendments ("Count II"). (*Id.* ¶¶ 611-617.) Smith also brings several constitutional claims for damages against all Defendants based on the individual judge defendants' alleged failure to provide due process of law in violation of Smith's Fifth and Fourteenth Amendment rights (Count III) (*id.* ¶¶ 621-

---

[6] The complaint in *Smith X* named Justices Scalia, Kennedy, Thomas, Roberts, Stevens, Ginsburg, Breyer, Alito, and Sotomayor as defendants. (*See Smith X*, No. 09-1926, Compl., ECF No. 1.) When *Smith X* came to the Supreme Court on Smith's petition for *certiorari*, Justices Scalia, Kennedy, Thomas, Ginsburg, Breyer, Alito and Sotomayor recused themselves, 131 S. Ct. 1614 (2011), which meant that the Supreme Court lacked a quorum to consider the matter. *Id.*

629), and also their alleged denial of access to the courts in violation of Smith's First and Fourteenth Amendment Rights (Count IV) (*id.* ¶¶ 630). Similarly, Smith alleges that the defendant judges of the Courts of Appeal in the Tenth Circuit and the D.C. Circuit are liable for the alleged constitutional deprivations of the defendant judges of their respective district courts under a theory of supervisory liability (Count V). (*Id.* ¶¶ 638-644.) Finally, Smith argues that the United States is liable for the judges' various deprivations pursuant to "*jus cogens* international law and/or inherent limits of its own sovereignty" for failure to prevent the above-described constitutional violations (Count VI). (*Id.* ¶¶ 645-652.)[7]

Defendants have filed two motions to dismiss, on behalf of two different groups of defendants, arguing that this Court lacks jurisdiction on sovereign immunity grounds, that res judicata and collateral estoppel principles bar Smith's claims, and that the instant complaint fails to state a claim upon which relief can be granted because no cause of action is available for certain claims. (*See* D.C. Defs.' Mem. at 2-3; Non-D.C. Defs.' Mot. at 14.) In his opposition to Defendants' motions, Smith generally maintains that none of these principles apply. In Plaintiff's view, sovereign immunity is unconstitutional and lacks foundation in law; there are clear reasons why absolute immunity, res judicata, and collateral estoppel do not apply; and the Constitution and international law create cognizable causes of action that sufficiently state a claim upon

---

[7] After Smith filed the instant complaint and before the Defendants responded, Smith filed a series of motions requesting immediate removal of all the judges named in his complaint (*see, e.g.*, ECF Nos. 10, 12, 18, 19); seeking declarations that the defendants had violated international law and the Constitution (*see, e.g.*, ECF Nos. 11, 17, 33); and asking for an order permitting Smith, as a private attorney general, to present evidence of Defendants' purported criminal constitutional conduct to a grand jury (ECF No. 32). These motions essentially argued for the same relief Smith ultimately seeks in his complaint; therefore, this Court issued an order denying each of these motions without prejudice, in order to allow Defendants the opportunity to respond to the allegations in the complaint, which Smith's motions generally repeated and sought to enforce. (*See* Order, ECF No. 34.)

which relief can be granted.  He also argues that a judicial opinion that dismisses a case or renders judgment in favor of a defendant is itself unconstitutional where, as here, the plaintiff has made a demand for a jury trial.  (*See* Pl.'s Resp. in Opp'n to Non-D.C. Defs.' Mot. to Dismiss ("Opp'n I"), ECF No. 41, at 5-8.)

After the motions to dismiss were fully briefed, Smith filed a motion that seeks the immediate removal of the D.C. Defendants (Second Emergency Mot. for Immediate Removal of D.C. Defs., ECF No. 39), as well as a motion seeking oral argument on all pending motions.  (Mot. for Oral Arg. on Pending Mots., ECF No. 47.)  These motions—which reassert many of the arguments that Smith made in the complaint and in his oppositions to Defendants' motions, often verbatim—are still pending.

## II.    LEGAL STANDARDS

### A. Motion To Dismiss Under Rule 12(b)(1)

Defendants contend that this Court has no subject-matter jurisdiction to entertain Smith's claims as a result of sovereign immunity, and thus that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1).  It is clear beyond cavil that the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002).  Indeed, when it comes to Rule 12(b)(1), it is "presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]"  *Muhammed v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C.

2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

"When a Defendant files a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), this Circuit has held that the court must first examine the Rule 12(b)(1) challenges . . . because if it must dismiss the complaint for lack of subject[-]matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined[.]" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (first alteration in original) (internal quotation marks and citations omitted); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction." (citation omitted)). Moreover, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65 (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)). Still, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

### B. Motion To Dismiss Under Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility "is not

akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and

citations omitted). The plausibility standard is satisfied "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* (citation omitted). "[W]hile detailed factual

allegations are not necessary, the plaintiff must provide more than an unadorned, the-

defendant-unlawfully-harmed-me accusation[.]" *Schmidt*, 826 F. Supp. 2d at 65

(internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

In deciding whether to dismiss a complaint for failure to state a claim, the court

"must treat the complaint's factual allegations—including mixed questions of law and

fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor."

*Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land

Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and

*Browning*, 292 F.3d at 242). However, the court need not accept as true inferences that

the facts set out in the complaint do not support, nor must the court adopt legal

conclusions that are cast as factual allegations. *Browning*, 292 F.3d at 242.

### C. Application Of The Pleading Rules To Pro Se Plaintiffs

In applying the legal framework addressed above, the Court is mindful of the fact

that Smith is proceeding in this matter pro se. The pleadings of pro se parties are to be

"liberally construed," and a pro se complaint, "however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (emphasis in original) (internal citations and quotation marks omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *McNeil v. United States*, 508 U.S. 106, 113 (1993). This means that even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss. *See, e.g.*, *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (dismissing complaint where pro se plaintiff failed to prove subject matter jurisdiction). Likewise, although a pro se complaint "must be construed liberally, the complaint must still 'present a claim on which the Court can grant relief'" to withstand a Rule 12(b)(6) challenge. *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (citation omitted)); *Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "[e]ven a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the complaint" (citation omitted)); *see also Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (noting that a pro se complaint must state a claim upon which relief can be granted).

## III.  ANALYSIS

The two pending motions to dismiss make substantially the same arguments for dismissal:  (1) that absolute and sovereign immunity bar Smith's claims, (2) that the complaint fails to state a claim upon which relief can be granted because no causes of action exist for the majority of its claims, and (3) that both res judicata and collateral estoppel preclude the claims in the complaint.  In large part, Defendants do not explain which arguments apply to which of the complaint's six counts, instead they argue that

each of these three defenses warrants dismissal of the complaint in its entirety.  In his

oppositions, Smith strenuously objects to all of Defendants' arguments, and reiterates

both the points made in the complaint and those that appeared in the myriad motions he

has filed during the course of this litigation.  In their reply, Defendants aver that

Smith's opposition "fails to demonstrate any cognizable authority as to why his

complaint should not be dismissed, other than his own beliefs about the law and how it

should be changed."  (D.C. Defs.' Reply, ECF No. 44, at 2.)

As explained further below, this Court concludes that it lacks jurisdiction over

the complaint's claims against the United States and the individual judge defendants in

their official capacity; that absolute immunity bars the claims against the individual

judge defendants in their individual capacity; and that the remaining counts fail to state

a claim upon which relief may be granted because there are no available causes of

action for those claims.  Consequently, the entire complaint must be dismissed.  In

addition, in light of Smith's history of filing multiple suits arising out of this same

dispute, prospective filing restrictions such as those imposed in the District of Colorado

are warranted here, and Smith will not be permitted to file new actions in this Court

without the representation of a licensed attorney admitted to practice in the District of

Columbia, unless he first obtains permission from the court to proceed pro se.  While

Smith is certainly entitled to appeal this Court's judgment dismissing his complaint

(and thus he has a continued avenue of relief in regard to the instant case), the Court

finds that he has completely and exhaustively aired his allegations in the two

complaints that he has already filed in this jurisdiction; therefore, prior to filing any

additional complaints arising out of the same underlying circumstances, he will be required to seek leave of Court.

### A. The Court Lacks Jurisdiction Over Smith's Claim For Damages Against The United States And The Individual Judge Defendants In Their Official Capacity

Defendants maintain that sovereign immunity prevents the Court's exercise of jurisdiction in this case. (D.C. Defs.' Mem. at 20; Non-D.C. Defs.' Mot. at 17 n.6.) Smith contends that the doctrine of sovereign immunity itself is an improperly-created legal fiction and should therefore be disregarded. (Compl. ¶ 425; Opp'n I at 32.) In the alternative, he argues that an international treaty and the Bill of Rights waive sovereign immunity, and further, that this Court is "obliged to declare the Bill of Rights void for want of enforcement" if it determines that sovereign immunity is in fact a bar to this suit, since, from Smith's vantage point, a citizen has no rights if he cannot enforce those rights against a federal judge. (Pl.'s Resp. in Opp'n to D.C. Defs.' Mot. to Dismiss ("Opp'n II"), ECF No. 43, at 29.) Because mere disagreement with the law is not a basis for setting it aside or declaring it invalid, Smith's principal position has no merit. Moreover, the law clearly establishes that sovereign immunity bars Smith's claims for damages against the United States and the individual judges in their official capacity.

The doctrine of sovereign immunity provides that the United States is immune from suit unless Congress has expressly waived the defense. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Cohens v. Virginia*, 19 U.S. 264, 411-12 (1821) ("The universally

14

received opinion is[ ] that no suit can be commenced or prosecuted against the United States[.]”); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (citations omitted). If sovereign immunity applies, the court lacks jurisdiction to entertain the offending suit. *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999). A lawsuit against a government official in his official capacity is tantamount to a suit against “an entity of which an officer is an agent[,]” *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted) (quoting *Monell v. N.Y. Dep’t of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); therefore, the sovereign immunity doctrine applies equally to the government itself and to any federal official sued in his or her official capacity. Significantly, although Congress may *waive* sovereign immunity—and, accordingly, the government’s liability to suit—any such waiver must be express. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). And a plaintiff bears the burden of establishing that sovereign immunity has been waived or abrogated. *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) (citations omitted).

In this case, Plaintiff has brought suit against both the United States and 19 individual Article III federal judges. (*See* Compl. ¶¶ 34-44.) The United States clearly falls within the protective reach of sovereign immunity. *See Mitchell*, 463 U.S. at 212. Moreover, to the extent that Smith has sued the judges in their official capacity, these defendants are part of the United States government for the purposes of sovereign immunity, as well. *See Graham*, 473 U.S. at 165-66; *Jackson*, 844 F. Supp. 2d at 76; *see, e.g.*, *Mason v. Judges of U.S. Ct. of Appeals for D.C. Cir. In Regular Active Serv.*

*Acting In Their Official Capacity*, 952 F.2d 423, 425 (D.C. Cir. 1991) ("To the extent the present suit is against the active judges of this court, it is a suit 'against the United States.'").[8] Thus, in order to avoid the sovereign immunity bar and the concomitant finding that this Court lacks jurisdiction, Smith must establish that Congress has waived sovereign immunity expressly with respect to the particular claim.

Smith has failed to carry this burden. With respect to Counts III through VI, which appear to seek money damages from the United States and the individual judges, Smith's primary contention is that sovereign immunity should not apply because that doctrine is facially unconstitutional or has no foundation in law. This proposition is entirely unsupported, as noted above. Smith's next argument—that the International Covenant on Civil and Political Rights ("ICCPR") waives sovereign immunity (*see* Opp'n I at 17)—fares no better. The ICCPR is a treaty that recognizes the importance of civil rights obligations of the signatory nations. *See Ralk v. Lincoln Cnty.*, 81 F. Supp. 2d 1372, 1380 (N.D. Ga. 2000). Although the treaty "contains general statements affirming the rights of individuals to live free from discrimination and oppression[,]" it "contains no explicit language waiving [ ] sovereign immunity[.]" *Godfrey v. Ross*, No.

---

[8] The complaint itself does not designate certain claims as being brought against the defendant judges in their official versus personal capacities. (*See* Compl. ¶¶ 621-644.) Hence, it is unclear whether Smith meant to bring this suit against the individuals in their official or personal capacities, or both. The D.C. Circuit has not taken a position on whether a plaintiff has a duty to specify the capacity in which a § 1983 or *Bivens* claim is being brought such that the court should presume official capacity unless otherwise stated, and other circuits are split on the matter. *Compare Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (section 1983 complaints that do not specify capacity are construed as having been brought against defendants in their official capacity), *cert. denied*, 128 S. Ct. 2932 (2008) *with Price v. Alaska*, 928 F.2d 824, 828 (9th Cir. 1990) (section 1983 complaints that do not specify capacity are construed as having been brought against defendants in their individual capacity). This Court need not take a position on this issue nor decide what Smith intended in the instant complaint because the capacity question is immaterial to the result of this case. *See Neff v. Bureau of Prisons*, No. 07-1672, 2009 WL 559514, at *1 n.2 (D.D.C. Mar. 5, 2009); *cf. McDonald v. Salazar*, 831 F. Supp. 2d 313, 318 n.6 (D.D.C. 2011) (where the plaintiff's amended complaint did not make clear whether the claims were against the defendants in their official or personal capacities, construing the claims as brought against defendants in their individual capacity because sovereign immunity would bar the official capacity claims).

2:11-2308, 2012 WL 507162, at *5 (E.D. Cal. Feb. 15, 2012) (record citation omitted).

Hence, courts have already found that the ICCPR does not waive sovereign immunity.

*See Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011) (citation omitted); *see, e.g.*, *Godfrey*, 2012 WL 507162, at *5; *Nhia Kao Vang v. Decker*, No. 2:12-1226, 2012 WL 5020491, at *6 (E.D. Cal. Oct. 17, 2012) (citing *Dickens v. Lewis*, 750 F.2d 1251, 1253-54 (5th Cir. 1984)); *Smith V*, 2008 WL 2751346, at *7 (D. Colo. July 11, 2008) (citation omitted); *Jama v. U.S. INS*, 22 F. Supp. 2d 353, 365 (D.N.J. 1998). And not only is Smith unable to cite to a single decision to the contrary, but he has also has raised precisely this argument in prior litigation, and it was rejected. *See Smith V*, 2008 WL 2751346, at *7 (D. Colo. July 11, 2008) (rejecting Smith's argument that the ICCPR creates provides any express waiver of sovereign immunity), *aff'd*, 350 F. App'x 190 (10th Cir. 2009), *cert. denied*, 559 U.S. 1086 (2010).

Plaintiff's final two sovereign immunity arguments—that *jus cogens* international law and the Bill of Rights waive sovereign immunity—are also inconsistent with established law. *Jus cogens* is the accepted principle that internationally accepted norms carry the force of law, *see* Black's Law Dictionary (9th ed. 2009), which appears to have no application under the instant circumstances. Regardless, the D.C. Circuit has made clear that a government does not waive sovereign immunity by committing violations of *jus cogens*, *see Belhas v. Ya'alon*, 515 F.3d 1279, 1292 (D.C. Cir. 2008) (citation omitted); therefore, even if such violations were established here, that would do little to advance Plaintiff's argument that sovereign immunity has been waived. In addition, the Bill of Rights clearly does not contain any

congressional mandate expressly waiving sovereign immunity, and Plaintiff is unable to point to any court that has held as much.

Therefore, Plaintiff has failed to meet his burden of proving a waiver of sovereign immunity, *see Tri-State Hosp. Supply*, 341 F.3d at 575, and as a result, the Court lacks jurisdiction over Count VI against the United States, and over Counts III, IV, and V to the extent that they seek money damages for constitutional violations that the United States or the individual judge defendants in their official capacities allegedly committed. *See Meyer*, 510 U.S. at 475; *Sherwood*, 312 U.S. at 586; *Galvan*, 199 F.3d at 463.

### B. Absolute Judicial Immunity Bars The Claims Against The Individual Judge Defendants In Their Personal Capacity

Smith's constitutional claims against the individual judge defendants (Counts III, IV, and V) also fail to the extent that this suit has been brought against them in their personal capacity. Smith seeks money damages for the judges' alleged violations of his constitutional rights, pursuant to 42 U.S.C. § 1983 (*see* Compl. ¶¶ 621-652), which this Court will construe as claims against the federal judicial officers made pursuant to *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971).[9]

---

[9] In their motions to dismiss, Defendants maintain that Counts III, IV, and V should be dismissed on the ground that § 1983 does not provide a cause of action against *federal* officials, because that statute only applies to officials acting under the color of *state* law. (D.C. Defs.' Mem. at 19 ("[W]hile the Plaintiff has averred claims under Section 1983, these fail to state a claim as well against the D.C. Court Defendants because that provision only applies to State actors, not federal officials." (citation omitted)); Non-D.C. Defs.' Mot. at 23 (same).) In his oppositions, Plaintiff asks the Court either to construe his § 1983 claims as if they were brought pursuant to *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971), or grant him leave to amend the complaint to effect this small change. (*See* Opp'n II at 35-36.) Given Plaintiff's pro se status and the fact that the court's analysis of a *Bivens* action mirrors that of a § 1983 claim, *see Moore v. Valder*, 65 F.3d 189, 192 (D.C. Cir. 1995); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 451 n.8 (D.D.C. 1991), the Court will construe Plaintiff's claims as if they were brought under *Bivens*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (directing district courts to use a more liberal standard with pro se plaintiffs).

Nevertheless, the claims against the individual judge defendants in their personal capacities are barred under the doctrine of absolute judicial immunity and thus must be dismissed pursuant to Rule 12(b)(6).  *See Forrester v. White*, 484 U.S. 219, 225 (1988) (claims against judges in their individual capacities must be dismissed because judges are absolutely immune from lawsuits predicated on acts taken in their judicial capacity); *Caldwell v. Kagan*, 455 F. App'x 1, 1 (D.C. Cir. 2011) (a claim asserted against a federal judge stemming from official judicial acts is subject to dismissal under Rule 12(b)(6) (citations omitted)); *see, e.g.*, *Tsitrin v. Lettow*, 888 F. Supp. 2d 88, 91 (D.D.C. 2012); *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 191-92 (D.D.C. 2005).[10]

It is well established that judicial immunity shields federal judges from a suit for money damages.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (citations omitted); *Rodriguez v. Editor in Chief, Legal Times*, No 07-5234, 2007 WL 5239004, at *2 (D.C. Cir. Dec. 19, 2007) (citations omitted); *Tsitrin*, 888 F. Supp. 2d at 91 (citing *Caldwell*, 455 F. App'x at 1).  This absolute immunity protects judges from allegations predicated on actions that they performed in their judicial capacity.  *See Mireles*, 502 U.S. at 12; *Forrester*, 484 U.S. at 225; *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978); *Clark v. Taylor*, 627 F.2d 284, 287 (D.C. Cir. 1980) (per curiam).  "Accordingly, courts in this district routinely dismiss matters filed against judges in their judicial capacity." *Tsitrin*, 888 F. Supp. 2d at 91 (collecting cases); *see also Moore*, 437 F. Supp. 2d at 91; *Rodriguez*, 2007 WL 5239003, at *2 (dismissing claims for money damages against

---

[10] Although the doctrines of absolute judicial immunity and sovereign immunity both lead to the same result, these two grounds for dismissal have different bases under the federal rules.  Sovereign immunity strips the court of jurisdiction and thus renders dismissal appropriate under Rule 12(b)(1). By contrast, absolute judicial immunity is a non-jurisdictional bar to a "claim asserted against a federal judge stemming from official judicial acts" and is thus "subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Tsitrin v. Lettow*, 888 F. Supp. 2d 88, 91 (D.D.C. 2012) (citing *Caldwell v. Kagan*, 455 F. App'x 1, 1 (D.C. Cir. 2011)).

state and federal judges challenging judicial actions).  The scope of this immunity is broad:  "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Stump*, 435 U.S. at 356-57 (citation omitted); *see also Forrester*, 484 U.S. at 227-29 (absolute immunity protects a judge for liability stemming from adjudicative acts performed in his official capacity); *Mireles*, 502 U.S. at 22 ("Judicial immunity is not overcome by allegations of bad faith or malice[.]").  In other words, "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."  *Stump*, 435 U.S. at 356.

A recent case from this district is particularly instructive.  In *Caldwell v. Kagan*, 865 F. Supp. 2d 35 (D.D.C. 2012), the plaintiff sued judges of the U.S. District Court in D.C., the U.S. Court of Appeals for the D.C. Circuit, the U.S. Tax Court, and a number of other federal officials for what he perceived as unjust and unconstitutional misconduct committed during the course of earlier cases.  865 F. Supp. 2d at 39-40. Specifically, the plaintiff contended that the judges' dismissals of his earlier complaints, and the Supreme Court's denial of his petition for certiorari, infringed his right to due process.  *Id.* at 40.  Because the cases had been properly before the judges when they took the challenged action, the court held that the district court judge who dismissed the plaintiff's previous complaints was entitled to absolute immunity, as was the panel of D.C. Circuit judges who affirmed that dismissal on appeal *regardless of whether the dismissal or denial actually violated the Constitution*.  *See id.* at 40, 42-43.

*Caldwell* and cases like it underscore the purpose of absolute judicial immunity: it safeguards the adjudicatory process because, without it, losing litigants would be "apt to complain of the judgment against [them]" and "ascri[be] improper motives to the judge." *Bradley v. Fisher*, 80 U.S. 335, 348-49 (1871). In the absence of such immunity protection, "[t]he judge would risk being haled into court by the losing party in every decision he rendered, and the second judge addressing the suit against the first would risk the same if he found in favor of the initial judge[,]" *Caldwell*, 865 F. Supp. 2d at 43 (quoting *Bradley*, 80 U.S. at 348-49), a result that would imperil the proper functioning of our federal court system. Thus, the well-established "remedy for alleged mishandling of a prior case is not a *Bivens* action against the . . . judge, who enjoys absolute immunity, but an appeal or appeals in the prior case[.]" *Howard v. U.S. Dist. Court ex rel. District of Columbia*, 468 F. App'x 12, 12 (D.C. Cir. 2012) (internal citations omitted).

Like *Caldwell*, the instant complaint presents the classic case of a dissatisfied litigant. Without question, all of the allegations in the instant complaint relate to the individual judges' actions in their roles *as judges*: the dismissal of Smith's prior cases, the content of the written opinions, and the justices' recusal decisions. (*See, e.g.*, Compl. ¶ 406L (challenging the judicial practice of issuing unpublished decisions); *id.* ¶ 406N (challenging the judges' treatment of pro se cases).) Defendants point out that Plaintiff has brought suit against "sitting judges simply because of their judicial acts and decisions when they presided over his previous unsuccessful lawsuits[,]" (D.C. Defs.' Mem. at 10; *see also* Non-D.C. Defs.' Mot. at 16-17), and Smith concedes as much: in his opposition, he highlights that the relevant facts of this case are the

"cursory opinions that [the defendants] issued[,]" and the "[un]professional and [in]competent manner" in which his earlier lawsuits were decided. (Opp'n II at 1, 4). Thus, as prior similar cases establish, the sole remedy for the "alleged mishandling" of Smith's prior cases is "an appeal"—which Smith "has [already] pursued and lost"—not a lawsuit against the judges who made that determination. *Howard*, 468 F. App'x at 12.

None of Smith's arguments against absolute judicial immunity persuade this Court otherwise. Neither the ICCPR nor the doctrine of *jus cogens* addresses, much less abrogates, absolute judicial immunity. *See Smith V*, 2008 WL 2751346, at *7; *Ralk*, 81 F. Supp. 2d at 1380. And Smith's contention that absolute immunity somehow does not apply because Defendants' treatment of his prior cases allegedly ran afoul of the Constitution fails to account for the fact that absolute immunity unquestionably is applicable, and warranted, whenever a challenged judicial decision was made in the exercise of judicial discretion—without regard to whether the offending judicial act was, itself, illegal or wrongful. *See Stump*, 435 U.S. at 356-57 (noting that even wrongful or malicious conduct is excused if done in the exercise of judicial discretion so long as the court had jurisdiction); *see, e.g.*, *Caldwell*, 865 F. Supp. 2d at 42-43.

In sum, insofar as Counts III, IV, and V seek money damages from the individual judge defendants in their personal capacities pursuant to *Bivens*—or any other legal theory, for that matter—these counts must be dismissed under Rule 12(b)(6) because absolute immunity protects the individual judge defendants from liability for performing the judicial acts that Smith now challenges.

### C. There Is No Cause Of Action Available For The Non-Monetary Relief Plaintiff Seeks

Two counts of the instant complaint request that this Court order specific forms of injunctive relief: (1) that the individual judge defendants be removed from the federal bench pursuant to the Good Behavior clause (Count I), and (2) that a grand jury be convened to allow Smith to prosecute the judges as a private attorney general (Count II). (*See* Compl. ¶¶ 601-617.) The Supreme Court has held that "judicial immunity is not a bar to prospective [injunctive] relief against a judicial officer acting in her judicial capacity[,]" *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984); *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (citation omitted), so absolute judicial immunity does not dispose of these claims. However, Defendants argue that Plaintiff cannot proceed with these claims because no private cause of action for removal of sitting federal judges or for permitting private citizens to serve as attorneys general is available. (*See* D.C. Defs.' Mem. at 18-19; Non-D.C. Defs.' Mot. at 22.) This Court agrees, and thus both Counts I and II must be dismissed under Rule 12(b)(6). *See John Doe v. Metro. Police Dep't of the District of Columbia*, 445 F.3d 460, 466 (D.C. Cir. 2006) (affirming dismissal of plaintiff's claims under Rule 12(b)(6) where no cause of action existed); *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions*, No. 11-806, 2014 WL 341071, at *9 (D.D.C. Jan. 30, 2014) (dismissing plaintiff's claims under Rule 12(b)(6) where no cause of action existed).

With respect to Smith's contention that the 'Good Behavior' clause of Article III gives private individuals the right to bring suit to remove federal judges from the bench (Compl. ¶¶ 601-605), Defendants cite a long line of cases that hold unequivocally that Congress—not private individuals like Smith—has exclusive authority to enforce the

Good Behavior clause by initiating impeachment proceedings. (D.C. Defs.' Mem. at 18; Non-D.C. Defs.' Mot. at 22.) Indeed, no less an authority than the Supreme Court has held that "[t]he 'good Behaviour' Clause guarantees that Art. III judges shall enjoy life tenure, subject *only* to removal *by impeachment*." *N. Pipeline Construction. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59 (1982) (plurality) (emphasis added) (citing *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 16 (1955)); *see Mistretta v. United States*, 488 U.S. 361, 410 (1989) ("[A] federal judge . . . continue[s], absent impeachment, to enjoy tenure 'during good Behaviour[.]'" (citation omitted)); *see also Hastings v. Judicial Conference of U.S.*, 770 F.2d 1093, 1107 (D.C. Cir. 1985) (Edwards, J., concurring) ("[I]n order for Article III's guarantee of independence to be fulfilled, the Constitution must be interpreted to designate impeachment as the *exclusive* mechanism for disciplining or removing federal judges." (emphasis in original)). Moreover, Plaintiff has made the 'Good Behavior' removal request in prior lawsuits, and the courts that previously considered this issue also concluded that there is no private right of action to seek removal of a sitting federal judge. *See, e.g.*, *Smith v. Krieger*, 389 F. App'x at 798 ("Smith argues that impeachment is not the sole means of removing Article III judges who no longer exhibit the 'good Behaviour' required for continued tenure under Article III of the Constitution. Instead, he argues, the Ninth and Tenth Amendments work to reserve to the people the right to remove such Article III judges. We disagree."); *Smith VII*, 2009 WL 4035902, at *2 (D. Colo. Nov. 19, 2009) (rejecting Smith's Good Behavior clause cause of action because only Congress can remove a federal judge from office). Constitutional scholars, too, have concurred that a textual analysis "clearly reveals that impeachment must be the sole means of removal of

a federal judge from office."  Martin H. Redish, *Judicial Discipline, Judicial Independence, and the Constitution: A Textual and Structural Analysis*, 72 S. Cal. L. Rev. 673, 673 (1999).  In light of the binding precedent that clearly establishes that private citizens have no right to seek to enforce the Article III 'Good Behavior' clause through a lawsuit for injunctive relief that requests removal of a judge, this Court concludes that Count I must be dismissed for failure to state a claim upon which relief can be granted.[11]

Likewise, Smith's contention that private individuals have the power to prosecute others for crimes under the Ninth and Tenth Amendments, and that this Court should convene a grand jury to permit him to exercise that authority here (Compl. ¶¶ 611-617) is unavailing.  "Our entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another."  *Robertson v. U.S. ex rel. Watson*, 560 U.S. 272, 278 (2010) (Roberts, dissenting).  By statute, Congress conferred the power to prosecute crimes on the United States Attorney General and his delegates, *see* 28 U.S.C. §§ 515-519, and under uncontroverted Supreme Court precedent, that power is exclusive.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority . . . to decide whether to prosecute a case[.]" (citation omitted)); *id.* at 694 ("Under the authority of Art. II, [§] 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government."

---

[11] Notably, and for what it's worth, this does not mean that private citizens are entirely without options with respect to the conduct of purportedly misbehaving judges:  when judicial misconduct is "prejudicial to the effective and expeditious administration of the business of the courts," or a judge "is unable to discharge all the duties of office by reason of mental or physical disability," 28 U.S.C. § 351(a), "Congress has established a statutory mechanism for complaints of judicial misconduct that can culminate in Congressional impeachment proceedings."  *Smith v. Krieger*, 389 F. App'x 789, 798 (10th Cir. 2010) (citing 28 U.S.C. §§ 351-364).

(citation omitted)); *Confiscation Cases*, 74 U.S. 454, 457 (1868) ("Public prosecutions . . . are within the exclusive direction of the district attorney[.]"); *Ballance v. Peeples*, No. 10-864, 2010 WL 3069201, at *1 (D.D.C. Aug. 5, 2010) (noting that a private individual "cannot compel a criminal investigation").  Plaintiff provides no citations to cases that support his position, and the courts that previously considered his argument in this regard concluded that it lacks foundation in the law.  *See, e.g.*, *Smith v. Krieger*, 389 F. App'x at 799 (there is "no right to initiate a criminal prosecution in the name of the United States under the Ninth or Tenth Amendments, or otherwise"), *cert. denied sub nom. Smith v. Anderson*, 131 S. Ct. 1511 (2011).  Accordingly, Smith's claim that this Court can convene a grand jury to afford him the right to initiate criminal proceedings against Defendants fails and must be dismissed under Rule 12(b)(6).  *See John Doe*, 445 F.3d at 466; *Sabre Int'l Sec.*, 2014 WL 341071, at *9.

## IV.    REQUEST FOR SANCTIONS AND PRE-FILING INJUNCTION

Having considered, and disposed of, each of the counts in the instant complaint on the grounds of sovereign immunity, absolute judicial immunity, or the fact that a cause of action is not available to Plaintiff, this Court need not address the other substantive arguments that Defendants have made in support of dismissal, including whether *res judicata* or issue preclusion bars consideration of Smith's claims.[12] However, the Court will address Defendants' request that this Court impose monetary sanctions and/or a pre-filing injunction that would bar Smith from filing any further actions in this district without first seeking leave of court.  (D.C. Defs.' Mem. at 22;

---

[12] Given that no claims remain, the Court also need not consider Plaintiff's novel argument that summary judgment and dismissal pursuant to Rule 12(b)(6) are unconstitutional when a plaintiff makes a jury demand.  (*See* Opp'n II at 5-8.)

Non-D.C. Defs.' Mot. at 25.)  Defendants argue that, given Smith's practice of filing actions in federal court that re-raise claims that were previously rejected, the Court should impose a pre-filing injunction on Smith similar to the one imposed on him in the District of Colorado (D.C. Defs.' Mem. at 22; Non-D.C. Defs.' Mot. at 25) as well as monetary sanctions (Non-D.C. Defs.' Mot. at 24).  Smith's opposition to Defendants' motions to dismiss does not address Defendants' request for future filing restrictions, but with respect to monetary sanctions, Plaintiff contends that the request for monetary sanctions should be denied for two reasons:  first, because the request is procedurally improper under Rule 11, which mandates that motions for sanctions be made "separately from any other motion"; and, second, because his lengthy complaint and multitude of motions purportedly "evidence [his] due diligence," in stark contrast to the frivolousness that Rule 11 punishes.  (Opp'n I at 42-43.)

### A. Defendants' Request for Monetary Sanctions

In the debate over Defendants' request for monetary sanctions, this Court agrees with Plaintiff.  Rule 11 authorizes the court to sanction "an attorney, law firm, or party" under specified circumstances, *see* Fed. R. Civ. P. 11(c)(1), but also makes clear that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct[.]"  Fed. R. Civ. P. 11(c)(4).  Rule 11 provides certain bases for the imposition of sanctions, including that a party's legal contentions are frivolous or unwarranted under existing law, or that the claims have been presented for an improper purpose such as harassment.  *See* Fed. R. Civ. P. 11(c)(1); *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anthony v. Baird*, 12 F. Supp. 2d 23, 25 (D.D.C. 1998).

Monetary sanctions are one type of authorized penalty that is purely

discretionary and may be imposed whenever a court determines that Rule 11 has been violated, provided that the sanctioned party has been given a notice and an opportunity to respond. Fed. R. Civ. P. 11(c)(3); *see Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (citation omitted). Indeed, Rule 11 monetary sanctions can even be imposed on pro se litigants. *See* Fed. R. Civ. P. 11(b); *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 n.2 (D.D.C. 2011) (citation omitted); *see, e.g.*, *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005) (collecting cases from the Second and Eleventh Circuits); *Patterson v. Aiken*, 841 F.2d 386, 387-88 (11th Cir. 1988) (pro se litigant was liable to pay attorneys' fees as a Rule 11 sanction after he filed an action based on claims that had already been dismissed as frivolous in prior litigation). For example, in *Patterson*, the Eleventh Circuit reviewed the district court's impositions of sanctions on a pro se plaintiff who had filed a fifth lawsuit bringing antitrust and constitutional claims against individuals who were involved in litigating and adjudicating the four prior actions that the plaintiff had filed. 841 F. 2d at 386-87. Because a similar allegation and legal theory in the complaint had already been dismissed, the Court of Appeals concluded that the plaintiff should have known that re-filing the same claim was improper; thus, it affirmed the district court's imposition of attorneys' fees as a monetary sanction under Rule 11. *Id.* at 387.

However, the fact that monetary sanctions can appropriately be assessed against a pro se party under the familiar circumstance of needlessly duplicative litigation does not necessarily mean that they *should* be. In light of the availability of other means of deterrence, this Court declines to exercise its discretion to impose monetary sanctions on Smith in this matter at this time. For the reasons explained below, however, this

Court does believe that this is an appropriate case for the imposition of a pre-filing injunction.

### B.  Defendants' Request For A Pre-Filing Injunction

There is no doubt that "a court may employ injunctive remedies"—such as filing restrictions—"to protect the integrity of courts and the orderly and expeditious administration of justice." *Kaempfer v. Brown*, 872 F.2d 496, 496 (D.C. Cir. 1989) (quoting *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985)).  Any such restrictions must be narrowly tailored to protect that interest "without unduly impair[ing] a litigant's right of access to the courts." *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (citing *Urban*, 768 F.2d at 1500).  Moreover, such restrictions "should remain very much the exception to the general rule of free access to the courts," and "the use of such measures against" pro se plaintiffs "should be approached with particular caution." *Powell*, 851 F.2d at 431 (internal quotation marks and citation omitted).  To address these concerns, prior to issuing pre-filing injunctions, courts in the district ordinarily follow three steps:  first, notice and the opportunity to be heard are provided, *see id.*; *see, e.g.*, *Caldwell v. Powell*, No. 13-1438, 2013 WL 6094237, at *11 (D.D.C. Nov. 20, 2013); second, the court develops a record for review that considers "both the number and content of the [plaintiff's] filings[,]" *Caldwell*, 2013 WL 6094237, at *11 (quoting *Powell*, 851 F.2d at 434); and third, the court "make[s] substantive findings as to the frivolous or harassing nature of the litigant's actions." *Caldwell*, 2013 WL 6094237, at *11 (citations omitted).

Here, Defendants' motions to dismiss provided Smith with ample notice that he may be enjoined from making future filings in this district, and Smith also has had the

opportunity to be heard on the matter of whether a prospective pre-filing injunction is appropriate because he was free to address the injunction issue in the context of his briefs in opposition to Defendants' motions. *Cf. Slate v. Am. Broad. Cos.*, No. 09-1761, 2013 WL 6713178, at *9 n.7 (D.D.C. Dec. 20, 2013) (an opportunity to address an issue in briefing counts as notice and an opportunity to be heard); *Bishop v. Wynne*, 478 F. Supp. 2d 1, 4 (D.D.C. 2006) (same); *Robert v. Dep't of Justice*, 439 F. App'x 32, 35 (2d Cir. 2011) (same).

Moreover, the number and content of Smith's prior filings provide sufficient basis for consideration of a pre-filing injunction. Smith has filed ten prior lawsuits, each with strikingly similar allegations, and the saga of this series demonstrates a clear pattern: Smith repeatedly files suit against the judges that decided his prior action when they do not order the relief he seeks, and in the context of each subsequent lawsuit, he propounds substantially the same legal arguments that the prior courts have considered and rejected. Although the specific claims and requests for relief may be stated somewhat differently in each new case, Smith's legal theories and the gravamen of the complaints remain the same, and for the reasons explained above, his substantive arguments do not have any merit. Thus, unless Smith is enjoined from filing any new action in the District of Columbia, it is highly likely that there will continue to be one lawsuit after another here in this district, naming each successive judge who considers the legally baseless contentions, world without end.

Finally, it is clear that Smith's cycle of filing lawsuits against judges who rule against him raises the spectre of harassment, and, in any event, constitutes an unwarranted burden on "the orderly and expeditious administration of justice." *Urban*,

768 F.2d at 1500 (citations omitted); *see, e.g.*, *Caldwell*, 2013 WL 6094237, at \*12-13 ("Plaintiff's repetitive filings of meritless claims against federal officials, federal judges and private parties, compounded by the cycle of adding on as new defendants each federal judge who has made a decision against the plaintiff, rises to the level of harassing and vexatiousness to warrant a pre-filing injunction."); *Davis v. United States*, 569 F. Supp. 2d 91, 93, 98-99 (D.D.C. 2008) (imposing a pre-filing injunction on the plaintiff after filing a fourth identical suit because "repetitive presentation of essentially identical claims wastes limited judicial resources").  The sheer number of suits and the circumstances in which they have been filed are, alone, enough to warrant characterizing Smith's lawsuits as harassment, but the tone of Plaintiff's successive suits dispels all doubt about the vexing nature of his pleadings.  *See Smith VII*, 2009 WL 4035902, at \*3 (collecting earlier cases reprimanding Smith for "abusive language" and "disrespectful litigation practices" (citations omitted)).[13]

Smith's practice of filing duplicative motions also reflects a litigation strategy that is properly characterized as harassment.  In the context of the instant action, Smith has not only filed two complaints but also a multitude of motions that seek the same ultimate relief as the pending complaint requests.  (*See, e.g.*, ECF Nos. 10, 12, 18-19 (motions requesting immediate removal of all the judges named in his complaint); ECF Nos. 11, 17, 33 (requesting declarations that Defendants violated international law and the Constitution); ECF No. 32 (seeking an order permitting Smith, as a private attorney

---

[13] Among the many disturbing statements that are made in the complaint is the assertion that several judicial defendants have "signed their own death warrants" by issuing unconstitutional opinions that amount to "acts of judicial tyranny" because "citizens have not only a right but the duty to kill tyrants[.]"  (Compl. ¶ 464; *see also* Emergency Mot. to Remove D.C. Defs., ECF No. 12, at 31 ("There may come a day when the need to 'Glock and load' to defend the Constitution from the depredations of a band of domestic tyrants, but Plaintiff prays that today is not that day[, as the Court has] the power to do the right thing[.]").)

general, to present evidence of Defendants' purported criminal constitutional conduct to a grand jury).) Yet again, this motion practice echoes Smith's filings in prior cases. *See, e.g.*, *Smith VII*, 2009 WL 4035902, at *4 (noting that "Smith has also shown a penchant for making duplicative arguments" given the multiple motions for relief that "all raise the same arguments that are found in his complaint and responses to the motions to dismiss"). And yet again, there appears to be no end in sight unless an injunction is issued.

Consequently, this Court concludes that narrowly-tailored, prospective filing restrictions are necessary. Similar to the restrictions that were imposed with respect to filings in the District of Colorado, this Court will order that Plaintiff be restricted from filing new actions in the U.S. District Court for the District of Columbia unless he is either represented by a licensed attorney admitted to practice in this court or requests and receives permission from the court to proceed pro se. As the accompanying order makes clear, with respect to any request for leave to bring an action pro se, Smith will be required to file a motion that includes specific information regarding, among other things, all prior cases that he has filed in this district and whether he has previously raised the legal issues brought in any new complaint. And if Smith files a pro se action in this district without first seeking leave to do in accordance with the stated prerequisites, the new case will be summarily dismissed.

## V.    CONCLUSION

As explained above, the complaint in this matter must be dismissed in its entirety—partly due to sovereign immunity, partly due to absolute judicial immunity, and generally because no cause of action exists for the claims that Smith brings.

Accordingly, as set forth in the accompanying order, the Court **GRANTS** both Defendants' motions to dismiss the complaint. Furthermore, in light of Smith's long history of filing successive actions against the judges who dismiss or deny the claims he has made in previous lawsuits, Smith is **ENJOINED** from filing another pro se action in this district without first seeking leave to file such action, in accordance with the directions stated in the accompanying order.

Date:  May 26, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge